# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER BOYD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:15-CV-823 NAB |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

The following opinion is intended to be the opinion of the Court judicially reviewing the denial of Christopher Boyd's application for a period of disability and disability insurance and supplemental security income benefits under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 8.] The Court has reviewed the parties' briefs and the entire administrative record, including the hearing transcripts and the medical evidence. The Court heard oral argument in this matter on June 14, 2016. Based on the following, the Court will affirm the Commissioner's decision.

I. **Issues for Review**

Boyd presents two issues for review. First, he asserts that the administrative law judge (ALJ) failed to account for his moderate limitations in concentration, persistence, and pace in the residual functional capacity (RFC) determination. Second, he asserts that the RFC determination

is not supported by some medical evidence. The Commissioner contends that the that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

**II.     Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the

claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006).

The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

## III.   Discussion

### A.   Boyd's Mental Health Treatment

Because Boyd's appeal focuses on the ALJ's findings regarding his mental health impairments and treatment, the Court will provide a summary of Boyd's mental health treatment.

#### 1.   Dr. Stephen Scher- State Agency Psychologist

Dr. Stephen Scher, a state agency psychologist, reviewed Boyd's mental health records before January 3, 2011. (Tr. 621-32.) Dr. Scher opined that Boyd's impairments of depression and generalized anxiety were not severe impairments. (Tr. 621, 624-25.) Dr. Scher found that Boyd had mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 629.) He found Boyd's allegations to be partially credible. (Tr. 631.)

#### 2.   Midwest Psychological Group-Eric Ikemeier, LPC

Licensed professional counselor Eric Ikemeier first evaluated Boyd during a diagnostic clinical interview on July 20, 2011. (Tr. 654-57.) At that time, Boyd reported that he felt depressed with anxiety, helpless, and hopeless; experienced racing thoughts, sadness, and disorientation; and lacked sleep. (Tr. 655.) Ikemeier diagnosed Boyd with major depressive disorder and assigned him a global assessment functioning (GAF)[1] score of 41. (Tr. 657.)

---

[1] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) (DSM-IV-TR).

Treatment records indicate that Boyd visited Ikemeier for treatment on average every week or two weeks between July 2011 and October 2013. (Tr. 647-654, 798-832.) Ikemeier described Boyd's prognosis as "guarded." (Tr. 647-654, 798-832.) Ikemeier initially diagnosed Boyd with major depressive disorder, recurrent, moderate. (Tr. 647- 651, 653-55, 826, 832.) Ikemeier eventually diagnosed Boyd with major depressive disorder, recurrent, severe and bipolar disorder. (Tr. 798-820.) Boyd was noted to have mood swings and isolation from others throughout the time period of his treatment. (Tr. 647-654, 798-832.) Boyd reported symptoms of inability to focus. (Tr. 648-49, 651, 827.) Boyd was late for six out of forty-three appointments. (Tr. 648, 802-803, 806, 812-13.) Boyd expressed suicidal ideation in July 2011. (Tr. 653.) Boyd expressed homicidal and suicidal ideations in September 2011 and was sent to the hospital. (Tr. 647.)

Ikemeier completed several evaluations and medical source statements regarding Boyd. (Tr. 671-73, 675-76, 706-707, 786-88.) Ikemeier's first opinion letter was co-authored with Dr. Bethany O'Neill, a licensed psychologist on October 5, 2011. (Tr. 671-73.) The letter indicates that Boyd's performance on the mental status examination suggests that he was of average range of intellectual function, had an adequate fund of knowledge, and showed an understanding of abstract reasoning. (Tr. 673.) Testing indicated that he could distinguish essential and non-essential details. (Tr. 673.) Other testing showed problems with memory and multiplying and dividing simple problems. (Tr. 673.) Boyd's diagnosis was major depressive disorder recurrent and his GAF score was 42. (Tr. 673.)

On November 4, 2011, Ikemeier completed a medical source statement where he found that Boyd was not significantly limited in most categories. (Tr. 675-76.) Ikemeier opined that Boyd was moderately limited in the ability to carry out detailed instructions; sustain an ordinary

5

routine without special supervision, work in coordination with or proximity to others without being distracted by them; ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 675-76.) Ikemeier opined that Boyd was markedly limited in the ability to maintain attention and concentration for extended periods; make simple work related decisions; and the ability to set realistic goals or make plan independently of others. (Tr. 675-76.) Ikemeier indicated that Boyd was extremely limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary norms and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 675-76.)

Ikemeier completed a second medical source statement on March 3, 2012. (Tr. 706-707.) In the March 2012 medical source statement, Ikemeier indicated that Boyd was extremely limited in the ability to set realistic goals or make plans independently of others and markedly limited in the ability to maintain attention and concentration for extended periods. (Tr. 706-707.) Ikemeier opined that Boyd was moderately limited in most of the other work related categories including understanding and memory, sustained concentration and persistence, social interaction, and adaptability. (Tr. 706-707.)

On November 7, 2013, Ikemeier and Dr. O'Neill, authored a second letter regarding Boyd. (Tr. 786.) In their letter, the providers state that Boyd was initially diagnosed with major depressive disorder and generalized anxiety disorder, but therapy revealed greater psychological problems and his diagnosis was changed to Bipolar II, panic disorder with agoraphobia, social phobia, and post-traumatic stress disorder (PTSD). (Tr. 786.) They also indicate that while

Boyd is being medicated, his medications offers limited relief and he remains in pain, is easily confused, and angered, is unable to leave home, and sits alone in his room all day. (Tr. 786.) They opined that his conditions were "severe" and "debilitating." (Tr. 786.) They assessed his GAF score as 33.

On November 7, 2013, Ikemeier completed a third medical source statement. (Tr. 787-88.) In the medical source statement, Ikemeier opined that Boyd was moderately limited in the ability to remember locations and work-like procedures; understand, remember, and carry out simple instructions; sustain an ordinary routine without special supervision, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and the ability to travel to unfamiliar places. (Tr. 787-88.) He found that Boyd was markedly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 787-88.) Ikemeier opined that Boyd was extremely limited in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination or proximity to others without being distracted by them; ability to make simple work related decisions; ability to respond appropriately to changes in the work setting; ability to be aware of normal hazards and to take appropriate precautions; and ability to set realistic goals or make plans independently of others. (Tr. 787-88.)

### 3. Dr. Thomas Spencer- Consultative Psychologist

On May 2, 2013, Dr. Thomas Spencer completed a consultative examination of Boyd. (Tr. 752-56.) The mental status examination indicated that Boyd's speech was within normal limits, his mood was anxious, and his affect was restricted. (Tr. 754.) Boyd denied homicidal or suicidal ideations. (Tr. 754.) Boyd's flow of thought was intact and relevant and he did not appear to have any hallucinations or delusions. (Tr. 754.) Boyd was oriented to person, time, place, and event. (Tr. 754.) Boyd's insight and judgment seemed intact. (Tr. 754.) Dr. Spencer diagnosed Boyd with PTSD, depressive disorder not otherwise specified, and alcohol dependence in remission. (Tr. 756.) Dr. Spencer found that Boyd's GAF score was 50-55. (Tr. 756.) He opined that Boyd had a mental illness, one which interferes with his ability to engage in employment suitable for his age, training, experience, and/or education. (Tr. 756.) Dr. Spencer opined that with continued sobriety, as well as appropriate treatment and compliance, Boyd's prognosis would improve. (Tr. 756.)

### 4. Nurse Practitioner Jimmy Bell

Boyd visited nurse practitioner Jimmy Bell in 2013. (Tr. 768-781.) Boyd came to Bell to have disability paperwork completed. (Tr. 778, 768.) At his visit in June 2013, Boyd's mental status was normal and his affect was pleasant. (Tr. 780.) Bell advised Boyd that "he needs to be doing everything in his power to increase his chances of being on disability and I don't think smoking up to 2 packs of cigarettes a day is helping our cause." (Tr. 780.) During his August 2013 visit, Boyd complained of increased anxiety, lumbar pain, and "sciatica pain." (Tr. 773.) Bell noted that Boyd's mental status was grossly normal, but his affect was anxious. (Tr. 775.) Bell diagnosed Boyd with anxiety not otherwise specified and altered mental status. (Tr. 775.)

On October 1, 2013, Boyd had an appointment to fill out paperwork from his lawyer's firm. (Tr. 768.) Boyd reported increased problems with memory loss and ongoing joint pain. (Tr. 769.) Boyd also complained of a panic and anxiety disorder. (Tr. 770.) Bell noted that Boyd's mental status was grossly normal and his affect was pleasant. (Tr. 771.) Bell diagnosed Boyd with anxiety not otherwise specified, depressive disorder, mild cognitive impairment, and altered mental status. (Tr. 771.)

On November 7, 2013, Bell and Dr. Donald James (listed as a collaborator), completed a mental medical source statement regarding Boyd. (Tr. 790-91.) The statement indicates that Boyd is extremely limited in the ability to set realistic goals or make plans independently of others. (Tr. 790.) They opined that Boyd was markedly or moderately limited in several areas of understanding, memory, sustained concentration and persistence, social interaction, and adaptability. (Tr. 790-91.)

    **B.**    **RFC Determination**

Boyd contends that the RFC is not supported by substantial evidence, because the ALJ did not account for Boyd's moderate limitations in concentration, persistence, or pace and the RFC is not based on some medical evidence. The RFC is defined as what the claimant can do despite his or her limitations, and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is a function-by-function assessment of an individual's ability to do work related activities on a regular and continuing basis.[2] SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and the claimant's own descriptions of his limitations.

---

[2] A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. SSR 96-8p, 1996 WL 374184, at *1.

*Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). "[T]he ALJ is not qualified to give a medical opinion but may rely on medical evidence in the record." *Wilcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008). In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. §§ 404.1527(b), 416.927(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009).

In this case, the ALJ found that Boyd had the RFC to perform sedentary work with the following limitations: (1) occasional climbing of ramps and stairs; (2) never climbing ladders and scaffolds; (3) no exposure to hazards such as unprotected heights and moving mechanical parts, (4) occasional reaching with the non-dominant arm; (5) and limited to simple, routine work consistent with "unskilled" work. (Tr. 37.) Boyd contends that this limitation does not adequately account for his moderate limitations in concentration, persistence, or pace. The Commissioner contends that although the ALJ found at step three that the claimant had moderate difficulties in concentration, persistence or pace, the analysis at step three is different from the RFC analysis at step four, which takes into account credibility findings and other parts of the record.

"[E]ach step in the disability determination entails a separate analysis and legal standard." *LaCroix v. Barnhart*, 465 F.3d 881, 888, n. 3 (8th Cir. 2006). The evaluation of mental impairments at steps two and three of the disability analysis is not an RFC assessment, but a determination of the severity of mental impairments. *Morris v. Colvin*, No. 4:12-CV-2129 HEA, 2014 WL 636355 at *4 (E.D. Mo. Feb. 18, 2014). "The ALJ's step-four RFC determination requires a more detailed assessment" than the analysis at steps two and three. *Id.*

Finally, moderate limitations in concentration persistence, or pace would not automatically prevent Boyd from functioning in a competitive work environment. *See e.g. Blackburn v. Colvin*, 761 F.3d 853, 859-860 (8th Cir. 2014) (ALJ found moderate impairments in maintaining concentration, persistence, and pace and claimant found not disabled); *Roberson v. Astrue*, 481 F.3d 1020, 1024-1025 (8th Cir. 2007) (moderate limitation, as defined on the form itself, did not prevent individual from functioning satisfactorily).

Therefore, the Court must decide in this case, if the ALJ's analysis at step four in determining Boyd's RFC should have included limitations beyond simple, routine work consistent with unskilled work. Boyd contends that the Eighth Circuit's decision in *Newton v. Chater*, is analogous to this case and requires a remand. In *Newton*, the Eighth Circuit reversed the Commissioner's decision, because in the hypothetical question to the vocational expert, the ALJ did not include any deficiencies regarding concentration, persistence, or pace that resulted in a complete failure to complete tasks in a timely manner. *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996). In that case, on cross-examination, the vocational expert stated that a moderate deficiency in concentration and persistence would cause problems on an ongoing daily basis at the identified jobs regardless of what the job required from a physical or skill standpoint. *Newton*, 92 F.3d at 695. The Commissioner contends that in this case, Boyd's attorney did not inquire of the vocational expert about difficulties in employment regarding limitations in concentration, persistence, or pace and there is no indication that the vocational expert would testify that any of the jobs identified would be eliminated.

The Eighth Circuit has found that a hypotheticals regarding concentration, persistence, or pace that included the limitations of "simple routine, repetitive work" and "simple, repetitive, routine tasks" adequately captured claimants' deficiencies in concentration, persistence, or pace.

11

*See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (ALJ's hypothetical concerning someone who is capable of doing simple, routine tasks adequately captures claimant's deficiencies in concentration, persistence, or pace), *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (hypothetical that included the ability to do only simple routine tasks that do not require close attention to detail or work at more than regular pace is enough to distinguish case from *Newton*). Based on the record in this case and the foregoing case law, the Court finds that the ALJ's RFC determination adequately compensated for Boyd's moderate limitations in concentration, persistence, or pace.

Next, Boyd contends that the ALJ's RFC determination was not supported by some medical evidence. The Court disagrees. "A disability claimant has the burden to establish [his] RFC." *Eichelberger*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)). The ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The RFC determination is based on all of the evidence in the medical record, not any particular doctor's treatment notes or medical opinion. Although Boyd asserts that the ALJ's rejection of the medical opinions of his treatment providers, nurse practitioner Jimmy Bell and licensed professional counselor Eric Ikemeier, leaves the ALJ with no medical evidence to support the RFC, this is not true. The ALJ takes into account all of the evidence in the record including the claimant's credibility and other medical evidence in the record. Further, the ALJ was not required to give controlling weight to any of the medical opinions offered. The ALJ did grant partial, some, or limited weight to Mr. Bell's medical source statement, Dr. Spencer's consultative examination, and Dr. Scher's opinion. (Tr. 43-45.) The ALJ adequately noted the reasons that these opinions were not granted controlling or

substantial weight. Therefore, the Court finds that the ALJ's RFC determination was supported by substantial evidence in the record as a whole.

## IV. Conclusion

The Court finds that substantial evidence supports the ALJ's decision as a whole. As noted earlier, the ALJ's decision should be affirmed "if it is supported by substantial evidence, which does not require a preponderance of the evidence but only 'enough that a reasonable person would find it adequate to support the decision,' and the Commissioner applied the correct legal standards." *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014) (internal citations omitted). The Court cannot reverse merely because substantial evidence also exists that would support a contrary outcome, or because the court would have decided the case differently. *Id.* A review of the record as a whole demonstrates that Boyd has some restrictions in his functioning and ability to perform work related activities, however, he did not carry his burden to prove a more restrictive RFC determination. *See Pearsall*, 274 F.3d at 1217 (it is the claimant's burden, not the Social Security Commissioner's burden, to prove the claimant's RFC). Therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Docs. 1, 13.]

**IT IS FURTHER ORDERED** that the Court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

Dated this 14th day of June, 2016.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE